# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:12cr252 |
| | ) | **Electronic Filing** |
| OMALI MCKAY | ) | |

## MEMORANDUM OPINION

On May 22, 2013, a grand jury returned a seventy-nine count indictment charging Omali McKay ("defendant') with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and 280 grams or more of cocaine base in violation of 21 U.S.C. § 846; one count of possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii); one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); seventy counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 2; and five counts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a).

Presently before the court are defendant's first and second motions to suppress evidence. With respect to the first motion to suppress, a suppression hearing was held on September 19, 2013, during which Pennsylvania State Police Trooper Edward Walker testified and counsel were given an opportunity to argue their respective positions. For the reasons set forth below, both motions will be denied.

On August 25, 2012, at approximately 5:44 p.m., Corporals Chris Terrana and Marty Moorehead of the Pennsylvania State Police observed defendant as the front seat passenger of a black Chevrolet Cobalt driven and owned by Janice Chelko. Ronald Wright was the back seat passenger in the vehicle. Believing that defendant was the suspect in a domestic violence

incident, Corporals Terrana and Moorehead effectuated a traffic stop of Chelko's vehicle. Once the vehicle was stopped, all three occupants were handcuffed, detained and searched. A quantity of cocaine base, commonly known as crack cocaine, was found on Wright's person. No drugs or contraband were found on defendant's person. According to a police report, Wright asserted that the cocaine base belonged to defendant. Defendant ultimately was charged for the quantity of drugs found on Wright's person.

At the suppression hearing, Trooper Edward J. Walker of the Pennsylvania State Police testified that the traffic stop was initiated pursuant to 18 Pa.C.S.A. § 2711(a)[1] following three separate incidents of defendant's alleged criminal activity. The first incident occurred on July 31, 2012. The Lower Burrell Police Department responded to a McDonald's restaurant in the Lower Burrell area of Westmoreland County. When the police arrived at the location, they were advised that at approximately 12:30 a.m., a black male operating a tan colored Hyundai bearing Pennsylvania license plate number HKM-3413 arrived in the parking lot, emerged from the vehicle, brandished a handgun and demanded to know the whereabouts of store manager Chris Fennel. The vehicle from which the individual emerged was registered to defendant. An interview with Fennell revealed that Fennel believed defendant was upset because he thought Fennel was having a romantic relationship with Noelle Mitchell, defendant's estranged girlfriend.

---

[1] 18 Pa.C.S. § 2711(a) provides that "[a] police officer shall have the same right of arrest without a warrant as in a felony whenever he has probable cause to believe the defendant has violated section 2504 (relating to involuntary manslaughter), 2701 (relating to simple assault), 2702(a)(3), (4) and (5) (relating to aggravated assault), 2705 (relating to recklessly endangering another person), 2706 (relating to terroristic threats) or 2709.1 (relating to stalking) against a family or household member although the offense did not take place in the presence of the police officer. A police officer may not arrest a person pursuant to this section without first observing recent physical injury to the victim or other corroborative evidence. For the purposes of this subsection, the term 'family or household member' has the meaning given that term in 23 Pa.C.S. § 6102 (relating to definitions)." 21 Pa.C.S. § 6102 includes "current or formal sexual or intimate partners" in its definition of "family or household member."

2

A second incident involved text messages sent from defendant to Mitchell. On August 24, 2012, Trooper Walker interviewed Mitchell in connection with the ongoing investigation of defendant. Mitchell and defendant were reportedly going through a tumultuous break-up and Mitchell expressed concern about her safety after receiving threats of violence from defendant. Trooper Walker personally observed and downloaded during forensic analysis a series of text messages on Mitchell's cell phone sent from defendant between July 25, 2012 and July 27, 2012. A number of messages were "threatening in nature" and the threats were escalating over time. Several messages included threats by defendant to kill Mitchell's mother, sister and niece.

State Police became involved in a third incident after Mitchell contacted them on the evening of August 24, 2012. Mitchell, her sister, and another male were driving north along State Route 28 in Frazier Township, Pennsylvania at around 11:00 p.m. when defendant's vehicle pulled up next to them. Defendant was seen through the window yelling at Mitchell and brandishing a handgun. Defendant's vehicle dropped behind the vehicle in which Mitchell was a passenger when the three occupants heard what they each described as a gunshot. Mitchell's sister, who was driving, fled at a high rate of speed. Defendant pursued the fleeing vehicle and attempted several times to run it off the road. Mitchell, her sister and the other passenger reported the same narrative of events to police.

In the early morning hours of August 25, 2012, Trooper Walker learned of the previous night's incident and began assembling search warrants for two of defendant's residences. Trooper Walker was very concerned for Mitchell's safety and believed that defendant's speedy arrest was warranted because the incident involved domestic violence.

Trooper Walker intended to file a criminal complaint charging defendant for the August 24 incident using the Allegheny Standardized Arrest Program ("ASAP"), a computerized program for processing criminal charges. He attempted to login to ASAP from two different

3

locations but found that the program was malfunctioning. Unsure of when ASAP would be back up and running, Trooper Walker drove to Westmoreland County to have the two search warrants signed.

On August 25, 2012 at 2:16 p.m., the Honorable Christopher Scherer of the Court of Common Pleas of Westmoreland County signed two search warrants: one for defendant's 1051 Puckety Church Road, Lower Burrell, Pennsylvania residence, and a second for defendant's 2204 Constitution Boulevard, Apartment #201, New Kensington, Pennsylvania residence. The face of the Puckety Church Road warrant provided that the warrant shall be served no later than 2:16 p.m. on August 25, 2012. As is confirmed by the Receipt/Inventory, the search of 1051 Puckety Church Road occurred on August 25, 2012 at 5:50 p.m. Evidence seized from the execution of this search warrant included approximately one kilogram of cocaine, an AK-47 type assault rifle with 3,000 rounds of ammunition and over $270,000 in cash.[2]

Trooper Walker then advised all law enforcement participating in the drug investigation of defendant that defendant was to be arrested if he was found. From Trooper Walker's perspective, there was probable cause to make a warrantless arrest of defendant for domestic violence offenses under Section 2711(a). At the time the traffic stop was effectuated on Chelko's vehicle, there was neither a warrant for defendant's arrest nor criminal charges filed against him.

Defendant contends that the traffic stop was unlawful under the Fourth Amendment to the United States Constitution and seeks suppression of the crack cocaine. The Fourth Amendment guarantees:

---

[2] Judge Scherer could not sign a warrant for defendant's arrest or the criminal complaint because the domestic violence incident occurred in Allegheny County and therefore was outside of his jurisdiction. Judge Scherer was permitted to sign the search warrants because the property to be searched was situated in Westmoreland County.

4

> the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and that no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. IV.

Defendant has standing to challenge the traffic stop of Chelko's vehicle. The law is settled that a traffic stop constitutes a "seizure" of the driver within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the detention may be brief. Delaware v. Prouse, 440 U.S. 648, 653 (1979); see also United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Mosley, 454 F.3d 249, 253 (3d Cir. 2006). And although the Supreme Court said over and over in dicta that an officer seizes everyone in the vehicle during a traffic stop, it did not squarely answer the question whether a passenger is also seized until Brendlin v. California, 551 U.S. 249, 251 (2007) ("When a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment . . . We hold that a passenger is seized as well and so may challenge the constitutionality of the stop."). The only question remaining is whether the stop of Chelko's vehicle was constitutional.

Because an ordinary traffic stop is analogous to an investigative detention, it historically has been reviewed under the investigatory detention framework first articulated in Terry v. Ohio, 392 U.S. 1 (1968). See e.g., United States v. Elias, 832 F.2d 24, 26 (3d Cir.1987) (describing "Terry-like traffic stop[s]"). See also United States v. Delfin-Colina, 464 F.3d 392, 397 (3d Cir. 2006) ("Terry reasonable suspicion standard applies to routine traffic stops."). Under Terry and subsequent cases, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." United States v. Valentine, 232 F.3d 350, 353 (3d Cir.2000) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). Reasonable, articulable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the

evidence," Wardlow, 528 U.S. at 123, and only a "minimal level of objective justification" is necessary for a Terry stop. United States v. Sokolow, 490 U.S. 1, 7 (1989).

Ascertaining whether an officer has reasonable suspicion to effectuate a stop often involves an imprecise judgment. United States v. Robertson, 305 F.3d 164, 168 (3d Cir. 2002). The term is a common sense, non-technical conception that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695 (1996) (quoting Illinois v. Gates, 462 U.S. 213 (1983). As such, the standard is "not readily or even usefully reduced to a neat set of legal rules." Id. At its core, reasonable suspicion requires "some minimal level of objective justification' for making the stop." Alabama v. White, 496 U.S. 325, 329-30 (1990) (quoting INS v. Delgado, 466 U.S. 210, 217 (1984). It is a less demanding standard than probable cause. United States v. Silveus, 542 F.3d 993, 999-1000 (2008) (reasonable suspicion poses a lower hurdle because the level of intrusion on an individual's liberty is less great). While reasonable suspicion and probable cause are two different standards, both require the court to make a determination based on the "totality of the circumstances" when assessing whether the requisite basis existed to justify the police action. White, 496 U.S. at 330; see also Arvizu, 534 U.S. at 273-74. The question is whether the officer had a "particularized and objective basis" for suspecting the conduct in question. Id. at 330.

Here, Corporals Terrana and Moorehead personally observed defendant as the front seat passenger in Chelko's car after receiving a request from Trooper Walker that defendant be arrested pursuant to Section 2711 if he was found. The Fourth Amendment prohibits an arrest of a citizen except upon probable cause. Rogers v. Powell, 120 F.3d 446, 452 (3d Cir. 1997) (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995) (citing Papachristou v. City of Jacksonville, 405 U.S. 156 (1972)). "Probable cause to arrest exists when the facts and

circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Rogers, 120 F.3d at 453 (citing Orsatti, 71 F.3d at 483).

In Rogers, the Third Circuit held that the legality of a seizure based solely on statements issued by fellow officers depends upon whether the officers making the statements possess probable cause to make the arrest. Id. at 453. It further explained that "statements by fellow officers conveying that there is probable cause for a person's arrest, by themselves, cannot provide the 'facts and circumstances' necessary to support a finding of probable cause." Id. Instead, a seizure based on such statements is lawful "only if the statements made by fellow officers are supported by actual facts that satisfy the probable cause standard in United States v. Hensley, 469 U.S. 221 (1985)." Rogers, 120 F.3d at 453 (quoting in support Hensley, 469 U.S. at 231 (the lawfulness of a seizure based on fellow officers' statements "[t]urns on whether the officers who issued the [statements] possessed probable cause to make the arrest.")).

It is apparent that Trooper Walker had knowledge of facts and circumstances necessary to support a finding of probable cause for defendant's arrest. Defendant's estranged girlfriend and two passengers in the car she was driving had reported that defendant had pulled alongside Mitchell's vehicle, verbally threatened her while brandishing a firearm, and tried to run the car off the road as Mitchell attempted to avoid further confrontation. Each of the three individuals reported hearing a gunshot as Mitchell drove away from defendant. Based on this information, which was incorporated into the affidavits Trooper Walker presented to Judge Scherer, Trooper Walker had probable cause for a warrantless arrest of defendant under 18 Pa. C. S. § 2711(a) for among other offenses simple assault, aggravated assault and recklessly endangering another person.

It follows that the seizure of Chelko's vehicle was lawful under the Fourth Amendment. In other words, because Trooper Walker had probable cause to arrest defendant without a warrant and he relayed that he possessed this basis and made a request to other officers that defendant was to be arrested upon sight, Corporals Terrana and Moorehead had probable cause to arrest defendant for his domestic violence offenses. Because Corporals Terrana and Moorehead witnessed defendant in the front of Chelko's car after receiving the request from Trooper Walker, they had probable cause to stop the vehicle and effectuate the arrest of defendant. This showing exceeded that required to effectuate a traffic stop under Prouse, 440 U.S. at 663, which requires only reasonable suspicion that the vehicle or an occupant has violated the law.

Defendant's contention that there was a lack of corroborative evidence to justify his warrantless arrest is misplaced. "It is well settled that reasonable suspicion can be based on information gathered from another person." Robertson, 305 F.3d at 168; see also Johnson, 332 F.3d at 168 ("officers may rely on a trustworthy second hand report, if that report includes facts that give rise to particularized suspicion"). Each of the three victims of the August 24, 2012 incident provided a narrative of events to police and each version corroborated one another. Additional corroborative evidence includes the threatening text messages, which Trooper Walker personally observed on Mitchell's cell phone, and eyewitness accounts of the July 31, 2012 incident in which defendant brandished a gun at the McDonald's parking lot.

Defendant unquestionably was subject to seizure for these offenses. Thus, the stop of Chelko's vehicle objectively was reasonable under the Fourth Amendment. It follows that defendant's first motion to suppress evidence must be denied.

Defendant's second motion to suppress evidence seeks suppression of evidence seized from the execution of a search warrant at his 1051 Puckety Church Road residence. Defendant

challenges the constitutionality of the search on the basis that it was not authorized by the search warrant and therefore was unlawful under the Fourth Amendment to the United States Constitution.

The search warrant in question contains blank spaces for (1) the date and time that the warrant was signed and (2) the date and time by which the search was to be executed. Judge Scherer completed the first set of blank spaces, indicating that the search warrant was signed on August 25, 2012 at 2:16 p.m. With respect to the portion of the search warrant that contains blank spaces for the date and time by which the search of defendant's residence was to be executed, Judge Scherer filled in the same date and time: August 25, 2012 at 2:16 p.m. The search of defendant's residence actually was conducted at 5:50 p.m., three and a half hours after the deadline for execution specified on the face of the search warrant.

Defendant contents that the search was not authorized by the search warrant because it was executed too late. The government argues that the search warrant contained what is clearly and obviously a scrivener's error and that such an error does not render the warrant defective.

The U.S. Court of Appeals for the Second Circuit addressed a similar issue in United States v. Walker, 534 F.3d 168 (2d Cir. 2008). In Walker, the magistrate judge signed a search warrant on April 25, 2005 but mistakenly wrote that the warrant was to be executed by April 30, 2004. The defendant moved to suppress evidence, in part, on the ground that the error rendered the warrant defective. In upholding the district court's denial of Walker's motion, the court remarked:

> Indeed, it verges on frivolous for Defendant to argue that the magistrate judge intended to restrict the execution of the search warrant to a date in the past. Likewise, no serious argument can be made that [the affiant officer] intentionally postdated statements in his affidavit. We find that the only logical conclusion to be drawn from all of the evidence in the record is that both of the incorrect dates were merely scrivener's errors or products of clerical inadvertence. The defendant points to no evidence to the contrary.

9

Id. at 172.  See also United States v. White, 356 F.3d 865, 867-69 (8th Cir. 2004) (minor clerical errors are not fatal to a search warrant); United States v. Souffront, 338 F.3d 809, 822 (7th Cir. 2003) (same); United States v. Garza, 980 F.2d 546, 552 (9th Cir. 1992) (same); United States v. McKenzie, 446 F.2d 949, 954 (6th Cir. 1971) (same).

Here, it is clear that the error presented by the search warrant for defendant's 1051 Puckety Church Road residence was a product of clerical inadvertence and therefore does not render the warrant invalid.  Accordingly, defendant's second motion to suppress also will be denied.

Date: October 14, 2014

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc:   Michael J. DeRiso, Esquire
    Charles A. Eberle, Esquire

   (*Via CM/ECF Electronic Filing*)