# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:12cr252 |
| | ) | **Electronic Filing** |
| OMALI MCKAY | ) | |

## MEMORANDUM OPINION

On May 22, 2013, a grand jury returned a seventy-nine count indictment charging Omali McKay ("defendant') with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and 280 grams or more of cocaine base in violation of 21 U.S.C. § 846; one count of possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii); one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); seventy counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 2; and five counts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a). Presently before the court is defendant's third motion to suppress evidence as augmented at a hearing held on July 31, 2014. For the reasons set forth below, the motion will be denied.

Defendant had been the subject of a long-term investigation by federal, state and local law enforcement which was focused on his suspected large-scale drug trafficking and money laundering activities within the Western District of Pennsylvania. During the course of the investigation several named individuals provided information assertedly derived from their first-hand knowledge of defendant's drug trafficking activities, including activities that occurred at defendant's two residences: one at 1051 Puckety Church Road, Lower Burrell, Pennsylvania, and the other at 2204 Constitution Boulevard, New Kensington, Pennsylvania. One such

individual informed law enforcement that the individual personally had observed in the master bedroom closet of defendant's 1051 Puckety Church Road residence one and a half kilograms of cocaine, at least $100,000.00 in cash and an AK-47 assault rifle.

The investigation also uncovered evidence of a large-scale money laundering scheme. The scheme purportedly involved defendant giving cash generated from drug trafficking to third parties and having those third parties write personal checks to defendant. The checks were made to appear as payment for landscaping services performed by defendant's landscaping company; according to the informed position of the investigating officers, the landscaping company did not function as such, but instead was used as a means to disguise and wash proceeds from defendant's drug trafficking. Investigating officers also became increasingly concerned about defendant's violent behavior toward his estranged girlfriend and her friends and family.[1]

Based upon an affidavit of probable cause ("affidavit") containing details about the foregoing, the Honorable Christopher Scherer of the Court of Common Pleas of Westmoreland County signed two search warrants on August 25, 2012: one for defendant's Lower Borough residence at 1051 Puckety Church Road, and a second one for his New Kensington residence at 2204 Constitution Boulevard.

Defendant's motion to suppress challenges the validity of the two search warrants on the grounds that (1) the search warrant for 2204 Constitution Boulevard facially was defective as to address; (2) the search warrants were not supported by probable cause; and (3) the affidavit contained (a) stale information and (b) uncorroborated information from an informant whose reliability and credibility were unknown to law enforcement. Defendant augmented these grounds at a hearing held on July 31, 2014, by incorporating the arguments and positions advanced at that hearing. These additional grounds are that law enforcement's independent

---

[1] See Memorandum Opinion of October 14, 2014 (Doc. No. 104).

investigation failed to substantiate the information relayed by the key individual that provided purported details about defendant's drug trafficking operations and the affiant failed to account for bias and personal vindictiveness that this individual harbored toward defendant. The court will address each of defendant's contentions *seriatim*.

As the government points out, defendant's motion fails to state how the search warrant for his 2204 Constitution Boulevard residence is defective as to address. The court likewise is unable to decipher any defect in this regard. Defendant's first challenge is without merit.

Defendant's contention that the search warrants were not supported by probable cause similarly is unavailing. A search warrant is supported by probable cause when the attached affidavit sets forth sufficient facts and circumstances to justify a reasonable belief that a search of the specified premises will uncover evidence of criminal wrongdoing. See, e.g., United States v. Deaner, 1 F.3d 192, 196 (3d Cir. 1993) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)).

It is well-established that the role of a reviewing court in analyzing an issuing judge's initial probable cause determination is to assess whether the issuing judge had a substantial basis for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238 (1983). The United States Court of Appeals for the Third Circuit has explained that "[reviewing courts] are constrained to determine only whether the affidavit provides a sufficient basis for the decision the issuing judge actually made" and must refrain from engaging in *de novo* review as to whether probable cause actually existed. United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993) (recognizing that reviewing courts must refrain from making their own assessment as to probable cause). If a substantial basis for the issuing judge's determination exists, then that finding must be upheld notwithstanding the fact that "a different [issuing] judge might have found the affidavit insufficient to support a warrant." United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993).

3

An issuing judge's finding of probable cause "should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419). This is not to say, however, that reviewing courts should simply "rubber stamp [an issuing judge's] conclusions." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000). Case law makes clear that this deferential standard urges that "the resolution of doubtful or marginal cases in this area [ ] be largely determined by the preference to be accorded to warrants." Jones, 994 F.2d at 1055 (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)); see also United States v. Stearn, 597 F.3d 540 (2009) (acknowledging the Supreme Court's direction that cases which present close calls should be resolved in favor of upholding the warrant) (citing Gates, 462 U.S. at 237 n.10).

In assessing whether probable cause exists, an issuing judge must "make a practical, common-sense decision" that there is a "fair probability that . . . evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. The Supreme Court has described probable cause as a "fluid concept-turning on the assessment of probabilities in particular factual contexts." Id. at 232. Probable cause does not require direct evidence linking the crime with the place to be searched. Stearn, 597 F.3d at 554 (opining that while it would be ideal for every affidavit to contain direct evidence, a magistrate may issue a search warrant without it). Courts have recognized that probable cause "can be, and often is, inferred from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and [the] normal inferences about where a criminal might hide [evidence].'" Id. at 554 (citing Jones, 994 F.2d at 1056 (quoting United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985)).

When analyzing the existence of probable cause, the focus must be on "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Gates, 462 U.S. at 231 (probable cause is a "practical, nontechnical

conception"). The issuing judge must use common-sense and read the supporting affidavit in its entirety. Conley, 4 F.3d at 1206 ("[S]tatements in an affidavit may not be read in isolation-the affidavit must be read as a whole."). An issuing judge is permitted to make reasonable inferences from the information in the warrant application. United States v. Loy, 191 F.3d 360, 366 (3d Cir. 1999) ("In making the probable cause determination, the issuing magistrate may draw reasonable inferences from the material provided in the warrant application.") (quoting United States v. Rowland, 145 F.3d 1194, 1205 (10th Cir. 1998)). The issuing judge also is entitled to give "considerable weight to the conclusions of law enforcement officers with regard to where evidence of a crime is likely to be found . . . ." Whitner, 219 F.3d at 296 (quoting United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996)).

Here, consideration of all the facts and information submitted to Judge Scherer as well as the permissible inferences drawn therefrom provided a substantial basis for his finding of probable cause to search defendant's two residences. The nineteen page affidavit set forth sufficient facts to justify a reasonable belief that a search of defendant's two residences would uncover evidence of drug trafficking, reckless endangerment and terroristic threats. Such facts included information gleaned from interviews of several named individuals with first-hand knowledge of defendant's drug trafficking, money laundering and other criminal activities; information garnered from surveillance conducted in the vicinity of defendant's two residences; and documentation of text messages sent by defendant to his girlfriend and her sister exhibiting threats of violence toward them. A common sense understanding of the facts set forth in the affidavit verifies that at least a fair probability existed that evidence of defendant's wide array of criminal activity would be found at both of his residences.

Defendant next challenges the affidavit on the basis that it contained stale and uncorroborated information from an informant whose reliability and credibility were unknown to law enforcement. The affidavit was not based on deficient sources of information.

Staleness is a contextual inquiry and not simply a matter of measuring the age of information contained in an affidavit. United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993). The appropriateness of the delay in obtaining or seeking a warrant is assessed within the context of the evidence available and the nature of the criminal activity involved. Id. "[T]he mere passage of time does not render information in an affidavit stale where . . . the facts suggest that the activity is of a protracted and continuous nature." United States v. Yusuf, 461 F.3d 374, 391 (3d Cir. 2006) (internal citations omitted). This is particularly so in narcotics investigations, which are often necessarily protracted in nature and, as such, rely on older information. See United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983) ("We further observed that protracted and continuous activity is inherent in a large scale narcotics operation.") (internal citations omitted); accord United States v. Ritter, 416 F.3d 256, 263 (affirming finding of probable cause despite seven month delay between visual confirmation of drug-related activity and issuing of warrant).

Although law enforcement began investigating defendant in September of 2011, the gathering of information pertaining to defendant's criminal activity was ongoing, thus supporting the inference that defendant's drug trafficking was protracted and continuous in nature. Given the above standards and the nature and context of the ongoing investigation, the affidavit here did not contain stale evidence.

The affidavit likewise did not contain uncorroborated information from an individual whose reliability and credibility were unknown. Unlike anonymous tips, which rarely demonstrate the informant's veracity or basis of knowledge, see Alabama v. White, 496 U.S.

6

325, 329 (1990), tips from known informants are generally considered more reliable. See Adams v. Williams, 407 U.S. 143, 146-47 (1972). Where a known informant provides information, it is more likely to be reliable because officers can assess the informant's reputation and can hold the individual responsible if he or she provides fabricated information. Id. In fact, in Gates the Supreme Court adopted the "totality of the circumstances" test in deciding whether a tip from an informant was sufficiently reliable to justify reliance on the information in the particular context and setting. 462 U.S. at 230.

The information set forth in the affidavit came from known individuals who reportedly had first-hand knowledge of defendant's drug trafficking activity. For example, one individual told officers during an interview that the individual had witnessed at least one and a half kilograms of cocaine, at least $100,000.00 in cash and an assault rifle in a closet at one of defendant's residence. Another known individual revealed during an interview that the individual was aware that defendant had engaged in trafficking both powder and crack cocaine. Another individual stated that the individual had purchased cocaine from defendant on at least 30 occasions. These purchases usually would occur at defendant's 2204 Constitution Boulevard residence, where the individual observed bags of cocaine in both powdered and crack form along with a scale. Other individuals provided eyewitness accounts of the July 31, 2012 incident in which defendant arrived in the parking lot of a McDonald's restaurant brandishing a gun and demanding to know the whereabouts of an employee who was known to associate with his estranged girlfriend. Based on the totality of the circumstances, the information set forth in the affidavit sufficiently was reliable and corroborated. Defendant's contentions to the contrary are unpersuasive.

Finally, defendant's contention that the affidavit lacked probable cause because defendant's estranged girlfriend had provided inaccurate information is misplaced. Each of the

grounds identified by defendant in his motion as augmented at the July 31, 2014, hearing does not detract from the substantial basis for a finding of probable cause established by the affidavit.

Defendant challenges the accuracy of the affidavit on the ground that his estranged girlfriend had referenced numerous aspects of his asserted drug trafficking operation and in a number of instances she supplied the principal or only account of the alleged events. And her accounts were not borne out by the independent investigation conducted by law enforcement and were permeated with bias and vindictiveness. For example, defendant highlights that the girlfriend referenced a number of trips to New York to deliver cash and receive cocaine from defendant's mother. Defendant further notes that he had indicated his mother as dead on his visa application when he gained entry into the United States.

Trooper Walker and Judge Scherer had an adequate basis to credit the accounts of defendant's girlfriend recounted in the affidavit. She informed Trooper Walker that she and defendant had made a number of trips to New York to deliver large amounts of cash and acquire kilograms of cocaine that were transported back to Pittsburgh for distribution. She relayed numerous details about defendant's operations over a two to three year period, including trips to New York for delivering cash and receiving cocaine, the details of distributions at defendant's Pittsburgh residences, the details of transactions to generate receipts for sums of cash, the purchasing of property and furniture with cash, observations of large amounts of drugs and cash the last time she was at one of defendant's residences, and so forth.

As noted by the government, the girlfriend's account of these details carried with it attributes of reliability. First, they were made by someone known to and personally interviewed by the affiant, factors which bolster the credibility of the citizen providing the information. See United States v. Valentine, 232 F.3d 350, 353-54 (3d Cir. 2000) (the ability to assess the informant's character and demeanor in a face-to-face interview as well as the ability to hold the

informant accountable for providing false information are attributes that contribute to the assessment of the informant's reliability) (collecting cases); Gates, 462 U.S. at 233-34 (informant being subject to liability for false reports to authorities is a factor that properly is considered in determining whether further scrutiny of the witness is warranted when assessing the existence of probable cause) (citing Adams v. Williams, 407 U.S. 143, (1972)).

Second, the girlfriend made numerous statements reflecting her involvement and assistance in defendant's drug trafficking. Such declarations against penal interest provide an additional basis for crediting the account of events. See, e.g., United States v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986) ("a person admitting a crime risks disfavor with the prosecution if he lies to the police, since [o]ne who knows the police are already in a position to charge him with a serious crime will not likely undertake to divert the police down blind alleys.") (citing United States v. Davis, 617 F.2d 677, 693 (D.C. Cir. 1979), cert. denied, 445 U.S. 967 (1980)).

Third, the girlfriend subjected herself to retaliation from defendant by providing the information. In addition to accounts of defendant's extensive drug trafficking activities, she relayed that defendant had subjected her to physical, verbal and sexual abuse. Other individuals had corroborated defendant's recent acts of violence against her and others. The willingness to incur the risk of retaliation supplies additional grounds for assessing credibility. Valentine, 232 F.3d at 354 ("And when an informant gives the police information about a neighbor (as in Christmas) or someone nearby (as in our case), the informant is exposed to a risk of retaliation from the person named, making it less likely that the informant will lie.") (citing United States v. Christmas, 222 F.3d 141, 144 (4th Cir.2000)).

Fourth, the information imparted by the girlfriend was corroborated by several others interviewed by the affiant. These individuals verified details about the transactions and events that had been relayed by the girlfriend. Corroboration of details and events has long been a

factor which officers and members of the judiciary can take into account in assessing the reliability of information provided to law enforcement.

Against this backdrop, defendant's assertions about whether his mother was (1) alive and (2) the actual female in New York when the trips purportedly were witnessed by the girlfriend fails to detract from the sound reasons the affiant and Judge Scherer had for finding probable cause for the issuance of the search warrants.

Moreover, defendant's claim that the affidavit did not contain probable cause because independent investigation failed to substantiate what the girlfriend had relayed is belied by the actual record. Defendant asserts that GPS monitoring failed to substantiate that he was traveling to New York and independent surveillance failed to reveal that he was selling narcotics. But these arguments are misplaced for several reasons.

First, that defendant did not travel to New York in the weeks preceding his arrest did not make his girlfriend's account of the travels there in the past less worthy of belief. A very reasonable inference that the affiant and Judge Scherer were entitled to draw was that defendant had an adequate supply and there was no need to transport money at the time. In fact, the girlfriend's relaying information about the recently witnessed large quantities of cocaine and cash in the master-bedroom closet made the absence of travel to make payment and obtain supplies an inference that indeed was grounded in the realm of probabilities.

Second, independent surveillance corroborated that defendant (1) did not spend anytime conducting his ostensible lawn-care business, (2) did not appear to have lawn-care machinery and (3) did not appear to have a legitimate form of earnings to account for his significant acquisitions of real and personal property and the presumed payment of expenses in conjunction therewith. Of course, this assessment corroborated the girlfriend's (and other individuals') assertions that defendant never worked a day in his life and was a drug dealer.

Third, independent surveillance established that defendant regularly engaged in numerous counter surveillance measures. These included circling around in parking lots, circling around blocks, doubling back on routes just traveled and so forth. The affiant relayed that based on his experience, which included conducting many narcotics investigations, these counter surveillance measures were indicative of someone engaging in drug trafficking. And defendant engaged in more counter surveillance measures than anyone previously investigated by the affiant. In addition, independent surveillance repeatedly indicated defendant would leave his residence and make several stops at parking lots, public streets and similar locations, often meeting briefly with others. During these trips defendant often would elude surveillance by employing effective counter measures. Of course, the affiant and Judge Scherer were entitled to draw an inference that (1) these behaviors were indicative of someone engaging in drug trafficking activities and (2) this behavior corroborated the girlfriend's revelation that defendant was a large-scale drug dealer.

In short, the "independent investigation" did not undermine the accuracy of defendant's girlfriend in any material manner. It served to supply corroboration to the events she had relayed to law enforcement. Defendant's efforts to gain suppression of the fruits of the warrants on these grounds is unavailing.

Similarly, defendant's assertion that the affiant failed to account for the potential for bias and personal vindictiveness and thus the affidavit failed to establish probable cause falls short of the mark. The events precipitating the girlfriend making a report to the Lower Borough Police Department were highlighted in the affidavit, including the extensive argument that followed, as was the events leading to and following the girlfriend leaving defendant in 2009 and again in July of 2012. Thus, the acrimony between the two and potential for bias was more than adequately presented.

11

Finally, any remaining doubt about the impact of the investigation on the presence of probable cause is dispelled by a thorough review of the entirety of the affidavit. The affiant interviewed a number of individuals who corroborated several of the events relayed by the girlfriend. These included an individual who gave a first-hand account of purchasing cocaine and crack cocaine from defendant and an individual who arranged for another person to purchase cark cocaine from defendant and had knowledge that the transaction was completed. They also included individuals who had witnessed defendant's recent acts of violence. Such independent corroboration has long been a benchmark in assessing information provided by a tipster or informant. Gates, 462 U.S. 241 ("Our decisions applying the totality-of-the-circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's tip by independent police work."). The independent investigation and the corroboration gained from third-parties supplied the affidavit with more than an adequate factual premises to support the affiant and Judge Scherer's finding of probable cause.

Under the governing standards of review the affidavit supplied a substantial basis from which Judge Scherer could find that probable cause existed. Thus, defendant's third motion to suppress - as augmented through his motion to suppress pursuant to Franks v. Delaware and the arguments made in conjunction therewith at the hearing on July 31, 2014 - must be denied. An appropriate order follows.

Date: October 14, 2014

                                                                        s/ David Stewart Cercone
                                                                        David Stewart Cercone
                                                                        United States District Judge

cc:    Michael J. DeRiso, Esquire
        Charles A. Eberle, Esquire

        (*Via CM/ECF Electronic Filing*)